### 22039

William Thomas HARRES, Respondent, v. William D. LEEKE, and the South Carolina Department of Corrections, Appellants. Harry MOSES, Respondent, v. STATE of South Carolina, Appellant. Roger E. LANFORD, Respondent, v. STATE of South Carolina, Appellant.

(318 S. E. (2d) 360)

Supreme Court

*Atty. Gen. T. Travis Medlock, Retired Atty. Gen. Daniel R. McLeod, Asst. Atty. Gen. William K. Moore, Asst. Atty. Gen. William G. Rhoden,* Columbia, *for appellants.*

*William E. Seekford,* Towson, Md., and *Robert Holland,* Spartanburg, *for respondents.*

July 24, 1984.

LEWIS, Chief Justice:

Respondents William Thomas Harres, Harry Moses, and Roger E. Lanford pled guilty to exhibiting obscene films and were sentenced. They were subsequently granted post-conviction relief, and the State appeals. We reverse.

Respondents, represented by counsel retained for them by their employer, appeared during the second week of General Sessions Court in Spartanburg, presided over by Judge Timmerman, and pled guilty to several counts of exhibiting obscene films. The prior week of court was presided over by Judge Moss (former Chief Justice of this Court) who was referred to by counsel as the "hanging Judge". It is clear that respondents, cognizant of the certainty of having to face sentence and as a calculated trial strategy, entered their pleas during the second week before Judge Timmerman in order to avoid going before Judge Moss during the first week of court. All testified that they *thought* Judge Timmerman would suspend any sentence imposed and place them on probation. Judge Timmerman surprised respondents and sentenced them to prison terms. They now seek to have their pleas of guilty set aside because, they say, the pleas were not voluntarily and knowingly entered.

The lower court proposes to allow respondents another chance to again go "judge shopping" to obtain probationary sentences, upon the grounds that (1) the guilty pleas were not voluntarily and knowingly entered; (2) respondents were allegedly prosecuted and sentenced under Sections 16-15-160 and 16-15-220, when these sections had been repealed by Act No. 495 of the 1978 Acts of the General Assembly (now appearing as Section 16-15-310, et seq; Supplement to the Code), and (3) respondents received ineffective assistance of counsel.

The record shows conclusively that the pleas were ■ voluntarily and knowingly entered. There is undisputed evidence that each respondent knew what the charges were, acknowledged at trial and in the post-conviction proceedings that they were guilty, and knew that they could have had a trial as to their guilt if they desired it. These respondents recognized, as their trial counsel indicated, that they had no defense and their only course was to find the most lenient judge available.

The trial judge apparently considered that he was ■■ bound by the extent of the inquiries made by the judge at the time of the pleas. He was in error. Writing in *Lambert v. State*, 260 S. C. 617, 198 S. E. (2d) 118 (1973), Justice (now Chief Justice) Littlejohn stated the applicable rule:

> Under *Vickery v. State*, 258 S. C. 33, 186 S. E. (2d) 827 (1972), the voluntariness of a guilty pleas is not determined by an examination of the specific inquiry made by the sentencing judge alone, but is determined from both the record made at the time of the entry of the guilty plea and the record of the post-conviction hearing.

The trial judge elected to disregard the testimony of all three respondents, at the post-conviction hearing, to the effect that their guilty pleas were voluntary. Respondent Lanford even concluded his testimony with the statement that he, in any event, would have pled guilty. In *Whetsell v. State*, 276 S. C. 295, 277 S. E. (2d) 891 (1981), we denied post-conviction relief in part because the respondents at hearing "stated they would plead guilty again if granted a new trial."

The post-conviction hearing shows conclusively that the pleas were knowingly and voluntarily entered.

The contentions relative to the statutes under which respondents were tried are without merit. The actual indictments are framed in correct and current statutory language, and none of the respondents alleged excessive sentences in their Applications for Post-Conviction relief.

Respondents' claim of ineffective assistance of counsel is difficult to understand in view of the *stipulation for the record* that this is *not* an issue in the case.

The judgment is accordingly reversed and the sentences of respondents reinstated.

LITTLEJOHN and GREGORY, JJ, concur.

HARWELL, Justice (dissenting):

Under our scope of review after a grant or denial of post-conviction relief (PCR), "any evidence" of probative value to support the court's findings is sufficient to uphold those findings on appeal. *Griffin v. Warden,* 277 S. C. 288, 286 S. E. (2d) 145 (1982), cert. denied, 459 U. S. 942, 103 S. Ct. 255, 74 L. Ed. (2d) 199 (1982). The majority opinion ignores this scope of review and apparently abandons it. Rather than searching the record for evidence to support the trial court's findings, the majority has substituted its view of the facts for that of the trial judge. Certainly, the majority of this court cannot conclude that *no* evidence supports the trial court's findings.

A PCR judge must analyze the trial record and the testimony introduced at the PCR hearing to determine whether a guilty plea was taken in accordance with constitutional standards. *Vickery v. State,* 258 S. C. 33, 186 S. E. (2d) 827 (1972).

The trial record amply supports the lower court's finding that the pleas were not voluntarily and intelligently entered under *Boykin v. Alabama,* 395 U. S. 238, 89 S. Ct. 1709, 23 L. Ed. (2d) 274 (1969). This Court has stated that the judge taking a plea must be certain that the accused understands the charge and the consequences of the plea and that the record indicates a factual basis for the plea. "The court's warning should include an explanation of the defendant's waiver of constitutional rights and a realistic picture of all sentencing possibilities. Furthermore, abandonment of these rights cannot be due to ignorance or incomprehension for a plea of guilty is more than an admission of conduct, it is a conviction." *State v. Armstrong,* 263 S. C. 594, 211 S. E. (2d) 889 (1975).

The trial record is devoid of any indication that the respondents understood the possible consequences of their pleas. The trial judge asked respondent Moses his age, marital status, education, occupation, and whether he was in jail. He then informed him of the indictment and asked, "Are these your pleas?" and "Are you guilty?" The judge asked respondents Harres and Lanford a similar series of questions, and added, "Did you enter these pleas freely and voluntarily?" The judge made no inquiry or warning concerning a waiver of constitutional rights; nor were the respondents given a realistic picture of sentencing possibilities. In fact, they were not informed of the maximum permissible sentences, and the sentences the judge imposed exceeded those authorized by the Code.[1]

The record from the PCR hearing also contains evidentiary support for the finding that the pleas were not entered intelligently. The respondents' lawyer, a general practitioner who "doesn't handle a large number of criminal cases", testified that he did not inform the respondents of the sentencing possibilities. He told them that, by entering a plea before Judge Timmerman, they would probably not have to serve time. He could not recall whether he was even aware, at the time, of the maximum permissible sentence. The respondents testified that they did not see their attorney until the day they pled. Two of them dealt with him by telephone but did not discuss sentencing possibilities. The other respondent did not talk to the lawyer until the day of the plea.

The majority relies upon the respondents' testimony at the PCR hearing. This testimony reflected at most a layman's general familiarity with criminal justice system. The majority refers to the respondent Lanford's testimony that he would, in any event, have pled guilty, citing *Whetsell v. State,* 276 S. C. 295, 277 S. E. (2d) 891 (1981). However, Lanford

---

[1] The trial judge sentenced respondents Moses and Harres to four years incarceration and a $4,000 fine, suspended upon service of nine months and five years probation. Respondent Lanford was given concurrent sentences pursuant to the Youthful Offender Act and ordered to be confined for an indeterminate period not to exceed two years. All of these sentences were improper. Code §§ 16-15-160 and 16-15-220 (1976) were repealed by Act No. 495 (§§ 16-15-310 and 16-15-430). The maximum permissible punishment for a first offense is a fine no greater than $1,000 or imprisonment for no more than one year, or both.

merely stated that he would have pled even had he been told he was waiving appellate rights. In *Whetsell v. State*, the trial judge had advised the defendants of their right to a jury trial and of the maximum possible sentence.

My brethren make much of the respondents' judge-shopping. This factor is irrelevant in our scope of review. We must only determine whether any evidence supports the PCR court's finding that the pleas were not intelligently entered. The evidence, from both the trial record and the PCR hearing, supports the grant of PCR. This Court's scope of review does not allow us to substitute our judgment of the facts for that of the trial judge when his findings have evidentiary support.

I would, accordingly, affirm.

NESS, J., concurs.